## DECLARATION OF DEREK DOCKEN

I, Derek Docken, do hereby declare:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (hereinafter "TFO") with the Drug Enforcement Administration (hereinafter "DEA") and have been since November 2021. My current assignment is at the Medford Resident Office. I am also a Detective with the Central Point Police Department (CPPD), and I have been employed with CPPD for more than seven (7) years. Part of my training and experience has included the basic police academy, five (5) years of patrol, and more than one (1) year as a Field Training Officer (FTO). I have more than 1,200 hours of official law enforcement related training recorded with the Oregon Department of Public Safety Standards and Training. During my employment with the Central Point Police Department, I have investigated or assisted with the investigation of cases including the possession, distribution, and manufacture of controlled substances. While working these types of cases, I have consulted and conversed with numerous law enforcement officers from various local, state, and federal agencies on drug cases of many types, including the distribution of methamphetamine, heroin, fentanyl, marijuana, and cocaine. As a result of this and my own experience and training, I am familiar with these controlled substances and the methods employed by traffickers of these narcotics.

## PURPOSE OF THIS DECLARATION

2. This declaration is submitted in support of a Complaint *in rem* for forfeiture of $57,880 U.S. Currency (hereinafter **"Defendant Currency"**). On November 19, 2020, Central Point Police Department (CPPD) seized **Defendant Currency** from Oneseang SAYAVONG (SAYAVONG) at his residence of 106 Windsor Way in Central Point, Oregon pursuant to a

criminal investigation into SAYAVONG. An initial hand count of the **Defendant Currency** was conducted by CPPD investigators, which reported the amount as $57,880, in error. The **Defendant Currency** was then seized on or about September 7, 2023, upon the issuance of a federal seizure warrant, 23-MC-771, pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f). Once the currency was taken to a bank for an official count, the bank provided a corrected total of $57,920, for which SAYAVONG submitted a claim. This declaration however is submitted for only the amount listed in the seizure warrant dated September 7, 2023, which is $57,880.

3. In this declaration, I will demonstrate that there is probable cause that the **Defendant Currency** described above represents proceeds from the illegal production, conversion, and/or distribution of marijuana, in violation of 21 U.S.C. § 841, and is subject to forfeiture pursuant to the provisions of 21 U.S.C. § 881(a)(6).

4. The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This declaration is for the limited purpose of establishing probable cause for the Complaint. Therefore, I have not set forth each fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause.

## SUMMARY OF INVESTIGATION

5. On October 20, 2020, Central Point Police Department (CPPD) received a report of a rape of a 13-year-old juvenile girl and that SAYAVONG was the suspect. CPPD Detectives learned that the rape occurred at SAYAVONG'S residence, 106 Windsor Way Central Point, Oregon, and that a juvenile male was also at the residence when the rape occurred. CPPD Detectives interviewed the juvenile male on November 6, 2020, and learned that he was hired by SAYAVONG to water approximately 15 marijuana plants in the backyard of SAYAVONG's

Residence for $5.00 per plant.

6. On November 19, 2020, police stopped SAYAVONG, and he was taken into custody on warrants pertaining to the rape investigation. At the time of the traffic stop SAYAVONG was found to have two large bags of what was described as a green leafy substance that the officer believed were consistent with marijuana. SAYAVONG admitted the two bags contained approximately two pounds of marijuana.

7. SAYAVONG was transported to CPPD for further interviewing by Detectives. SAYAVONG advised he made "just about" a six-figure a year salary working in the hemp industry for a company he identified as "ONAC". SAYAVONG also advised he had other jobs in the hemp/marijuana industry.

8. The interview with the juvenile male present during the rape, the seizure of two pounds of marijuana during SAYAVONG's traffic stop, and SAYAVONG's claim he made "just about" a six-figure salary in the hemp industry led CPPD Detectives to believe illegal drug trafficking also occurred at the 106 Windsor Way, Central Point, Oregon residence.

Search Warrant

9. On November 19, 2020, CPPD then executed a state search warrant on SAYAVONG's residence at 106 Windsor Way, Central Point, Oregon for evidence pertaining to the reported rape. During the search of the residence investigators seized $57,920 in US Currency (of which $57,880 is the **Defendant Currency**), a plastic bag containing a white powdery substance which tested positive for cocaine, two balls of a black tar like substance wrapped in plastic which tested positive for heroin, a black digital scale with residue, and a Sig Sauer 40 caliber handgun. All the seized items were in SAYAVONG's bedroom, and the seized US currency was found in SAYAVONG's bedroom closet within a small brown suitcase.

Investigators also located a large amount of what appeared to be drying marijuana hanging as well as what appeared to be marijuana placed in bags.

10. While being interviewed at the CPPD, Detectives asked SAYAVONG if he had any firearms or cocaine in his home and SAYAVONG advised "not that I am aware of". SAYAVONG was then advised that officers had found the seized items in his residence. SAYAVONG said he was not sure who could have put those items in his home. SAYAVONG said he had about $60,000 in his home, which he claimed was his earnings from work in 2020. SAYAVONG denied any criminal activity at his residence.

Employment

11. On December 2, 2020, detectives followed up on SAYAVONG's claims of employment. SAYAVONG told detectives during his interview that he had worked for a male named Cliff Chang (CHANG). Detectives spoke with CHANG, in which CHANG advised that he initially hired SAYAVONG as a "handy man", but SAYAVONG never showed up to work and CHANG never paid SAYAVONG any money.

12. Detectives then followed up on the company "ONAC", in which SAYAVONG claimed he was making "just about" a 6 figure a year salary. Detectives were only able to locate "ONAC 7th Generation" which identified itself as a "cannabis clinic" dispensary with an associated address in Costa Mesa, California, which was not an actual location. Although detectives were unable to find a legitimate business entity associated with ONAC, they did find the following statement associated with the group:

> "Welcome to Oklevueha FAKE Native American Church (ONAC) of 7 Generation. A Non recognized religion that practices lies and deception to get your money. We stand to profit greatly from scamming you out of your hard earned cash. Our 1 review is

obviously fake and was made by our manager. Oklevueha Fake Native American Church of 7 Generation wants your money."

13.     During the investigation, detectives also interviewed SAYAVONG'S landlord, Arthur Durone, on December 8, 2020. Mr. Durone advised he was unsure of SAYAVONG's employment.  Durone said that SAYAVONG mostly paid his $1,750 monthly lease in cash. Mr. Durone advised he believed SAYAVONG worked for a nonprofit organization in Southern California that was associated with a Native American Tribe. Mr. Durone also said that SAYAVONG claimed he wanted to get into the hemp and marijuana cloning industry and was looking for property in the Rogue Valley. Mr. Durone further advised that he had gone with SAYAVONG to Las Vegas on one occasion where he witnessed SAYAVONG spend $5,000 on a pair of shoes, and approximately $30,000 in a Gucci Store on belts and clothes.

14.     Finally, on December 15, 2020, Detectives interviewed SAYAVONG's only sister, Bael Sayavong (Bael), regarding SAYAVONG. She stated that she believed he did landscape work and other side jobs. Bael further advised their family did not have much money, and there was no inheritance from their mother's recent passing. Bael also advised she believed the only item SAYAVONG had received from their mother's passing was a necklace which belonged to their mother.

Jail Phone Calls

15.     During the investigation, detectives also reviewed jail phone calls made by SAYAVONG from the time of SAYAVONG's lodging in the Jackson County Jail on November 19, 2020, until December 10, 2020. Detectives found that SAYAVONG had requested a female collect his "indoor" and send some out of the state (Atlanta) and claimed that "Atlanta" has $72,000 of his money. SAYAVONG also had additional conversations with other callers which

appear to be consistent with the business of importing/exporting marijuana, which included:

- SAYAVONG claiming his landlord, "Art," owed him $18,000;

- SAYAVONG claiming a male named Dave owed him $26,400; and

- SAYAVONG having conversations regarding "boxes" and shipments as well as conversations about money transfers to accounts and not depositing more than $10,000 at a time to avoid "red flags".

16. Additionally, investigators located a phone conversation SAYAVONG had with a female associate between November 19, 2020, and December 10, 2020, in which SAYAVONG informed the female that he told investigators he worked for "Cliff." SAYAVONG further instructed the female to notify "Cliff" of this claim and that "Cliff" would back him 100%. SAYAVONG however was unaware investigators had already spoken with Cliff CHANG.

17. In my training and experience I know the term "indoor" to commonly refer to indoor grown marijuana. I also know from my training and experience that marijuana is often times shipped out of the state of Oregon to other states where marijuana is illegal for the shipper to make a profit. The above listed conversations appear to indicate the shipment of marijuana out of the state of Oregon with the reference of "Atlanta" indicating possible shipments to Georgia where recreational marijuana is not legal.

Drug Trafficking Organization Identified

18. On September 5, 2023, CPPD Detectives learned that in August of 2020, DEA and the Siskiyou County Sheriff's Office (SCSO) investigated a drug trafficking organization (DTO) involving Hsui "Cliff" CHANG (CHANG) and two other individuals named Bryce COLEMAN (COLEMAN) and Caitlyn LECOMPTE (LECOMPTE) who illegally broker marijuana shipments to various states across the country.

19.     CPPD Detectives learned that on August 19, 2020, SCSO Investigators executed California State Search warrants at a residence where COLEMAN resided in McCloud California (hereinafter referred to as "residence 1"). During the warrant on residence 1, CHANG showed up at the residence and confirmed to SCSO Investigators that he is the owner of residence 1 and another property in Weed, California (hereinafter referred to as "residence 2"), both of which he rented to COLEMAN. During the execution of the search warrants for residence 1 and residence 2, over 1800 marijuana plants were eradicated, over 260 lbs of processed marijuana was seized, and hundreds of packages of marijuana candies were seized.

20.     During the execution of the search warrant at residence 1, multiple items belonging to LECOMPTE were also located, including a blue rolling suitcase containing clothing items that were in LECOMPTE'S possession when previously contacted by DEA Medford Investigators at the Rogue Valley International Airport on July 29, 2020. LECOMPTE was contacted at the Rogue Valley International Airport the month prior to the warrants in relation to her involvement in Money Laundering and the Import/Export of Marijuana. During the contact with LECOMPTE, DEA Medford Investigators seized $131,735 in U.S. Currency from LECOMPTE. Most of the cash seized was located inside LECOMPTE'S blue rolling suitcase, which is the same suitcase and clothing found during the search warrant at residence 1 on August 19, 2020.

## CONCLUSION

21.     Based on SAYAVONG's jail phone calls, SAYAVONG's cash transactions, SAYAVONG'S lavish purchases, the interviews with CHANG and SAYAVONG's sister, SAYAVONG's inability to provide a legitimate legal source of income, and the SCSO investigation surrounding CHANG, I believe the **Defendant Currency** to be profits from the

illegal sale of marijuana.

22. The evidence in this declaration provides probable cause to believe, and I do believe that the **Defendant Currency** seized from 106 Windsor Way Central Point, Oregon constitutes property furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, in violation of 21 U.S.C. § 841 and therefore subject to forfeiture pursuant to the provisions of 21 U.S.C. § 881(a)(6).

23. I have presented this declaration to Assistant United States Attorney Judith Harper who has advised me that in her opinion, the proposed complaint is supported by probable cause.

I declare under penalty of perjury that the forgoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 3rd day of April 2024

s/ *Derek Docken*
Derek Docken
Task Force Officer
Drug Enforcement Administration